<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WILLIAM DAYSON CASRELL, | : |
| Plaintiff, | : Civ. Action No. 14-2047-BRM-LHG |
| v. | : |
| SGT. REESE, SGT RUDAKOWSKI, C.O. BERRINGER, and MONMOUTH COUNTY JAIL, | : **OPINION** |
| Defendants. | : |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion for Summary Judgment by Defendants Monmouth County Correctional Institution ("MCCI"), improperly pled as "Monmouth County Jail"; Sergeant Shawn Reece ("Reece"), improperly pled as "Sgt. Reese"; Sergeant Robert Rutkowski ("Rutkowski"), improperly pled as "Sgt. Rudakowski"; and Correctional Officer Jeremy Berenger ("Berenger"), improperly pled as "C.O. Berringer" (collectively "Defendants"). *Pro se* Plaintiff William Dayson Casrell ("Plaintiff") has not opposed the Motion. For the reasons set forth herein, the Motion for Summary Judgment is **GRANTED**.

I.  **BACKGROUND**[1]

**A. Factual Background**

Plaintiff is a prisoner at MCCI and a practicing Muslim. (Second Am. Compl. (ECF No. 5) at 6; Cert. of Kira S. Dabby, Esq. (ECF No. 37-4), Ex. A, Tr. of Pl.'s Dep. at 22:2-3, 13:1-14:3.) He brings claims against Defendants under 42 U.S.C. § 1983 for violation of his First Amendment right to free exercise of religion. (ECF No. 5 at 6.) Plaintiff asserts on March 16, 2014,[2] he was in the act of calling out the "Adhan," the Muslim call to prayer, in a common area of the prison known as the "Day Space," when Berenger told him to stop. (ECF No. 5 at 8.) According to Plaintiff, Berenger told him to stop because the sound of the prayer reminded Berenger and certain ex-military inmates of their friends who had been killed while fighting in the Middle East. (*Id.*; ECF No. 37-4, Ex. A at 65:2-66:12.) Defendants, on the other hand, contend Berenger told Plaintiff to stop loudly yelling the Adhan, because he was violating MCCI's prohibition on disruptive conduct, which prohibits "[y]elling, screaming and loud or boisterous behavior" in the Day Room. (ECF No. 37-7 at ¶ 23; *see also* Defs.' Statement of Material Facts Not in Dispute (ECF No. 37-2) at ¶¶ 30, 36, 41-42; ECF No. 37-4, Ex. A at 48:9-24.) According to Defendants, there are certain areas in the prison where Plaintiff is permitted to call the Adhan, including his cell and the "Multi-Purpose Room," but not the Day Space. (ECF No. 37-2 at ¶¶ 21-26; ECF No. 37-4, Ex. A at 37:9-23, 40:15-41:10, 73:14-74:4; ECF No. 37-7 at ¶ 22.)

---

[1] The facts set forth in this Opinion are taken from the Complaint and affidavits, depositions, and other evidence submitted by Defendants in connection with their Motion for Summary Judgment.

[2] Plaintiff alleges in the Second Amended Complaint the incident at issue occurred on April 16, 2014, but Plaintiff filed his original Complaint in this matter prior to that date on March 31, 2014. March 16, 2014 appears to be the actual date of the incident based on the dates alleged in the grievance form Plaintiff submitted to the prison in relation to the incident. (Aff. of Lt. Michael F. Getmanov (ECF No. 37-7), Ex. 5, March 17, 2014 Monmouth County Sheriff's Office Department of Corrections Inmate Grievance Form.)

Plaintiff further asserts that later that day, Berenger provoked two ex-military inmates to physically attack Plaintiff for his religious beliefs. (ECF No. 5 at 8; ECF No. 37-4, Ex. A at 74:15-77:7.) Defendants counter these two inmates were independently agitated by Plaintiff's prayer, without any involvement by Berenger. (Aff. of Jeremy Berenger (ECF No. 37-6) at ¶ 7.) Additionally, Plaintiff claims the next day, Berenger, Reece, and Rutkowski threatened Plaintiff with discipline if he called out the Adhan again. (ECF No. 5 at 8; ECF No. 37-4, Ex. A at 78:6-20, 80:15-18, 81:23-82:3.) According to Plaintiff, they told him he would be placed in lock-up, where he could "make all the noise that [he] want[ed]." (ECF No. 5 at 8; ECF No. 37-4, Ex. A at 78:4-20, 81:23-82:3.) Defendants assert "disciplinary detention (lockup) is a typical punishment for violations of major MCCI rules, such as engaging in conduct which disrupts or interferes with the security or orderly running of the correctional facility." (Defs.' Br. in Supp. of Mot. for Summ. J. (ECF No. 37-3) at 12.)

On March 17, 2014, Plaintiff filed a formal grievance with MCCI complaining of his March 16, 2017 interaction with Berenger. (ECF No. 5 at 7; ECF No. 37-2 at ¶ 52; ECF No. 37-7 at ¶ 18.) Pursuant to the grievance procedure set forth in MCCI's Inmate Handbook, inmates are instructed to follow a three-step process to "exhaust all administrative grievances and appeal procedures before applying to outside agencies." (ECF No. 37-7, Ex. 3, Inmate Handbook at 38-39.) First, the inmate should approach the officer with whom he has a grievance. (*Id.* at 39.) Second, if the officer and his supervisor cannot satisfy the grievance, the inmate is instructed to file a written grievance on form ADM-67, Inmate Grievance Form. (*Id.*) The Program Captain or his designee will then review the grievance and return a response. (*Id.*) Third, if the inmate is dissatisfied with the Program Captain's decision, he must submit a written request for review to the Warden. (*Id.*) An unfavorable decision by the Warden completes the appeals process and

constitutes exhaustion of all available administrative remedies. (*Id.*) Plaintiff concedes he is familiar with and has read portions of the Inmate Handbook. (ECF No. 37-4, Ex. A at 25:22-23.) Additionally, the Inmate Grievance Form that Plaintiff filled out includes three sections: (1) Section A for the inmate to explain his grievance; (2) Section B for the Program Captain to respond to the grievance; and (3) Section C for the Warden to respond to the appeal. (ECF No. 37-7, Ex. 5.)

Plaintiff's March 17, 2014 grievance stated:

> I was calling the Adhan for the Muslim prayer on the tier like I always do and officer Berringer [sic] told me I can't call the Adhan because he and some inmates on the tier were ex-millitary [sic] and they get shellshocked from bad memories from being over in the Middle East, telling me he had to see his friends get blown up, because of hidden meanings from the war.

(ECF No. 37-7, Ex. 5.) Lieutenant Michael Getmanov ("Getmanov") reviewed the grievance and responded on March 27, 2014, stating, "[t]his issue on this day was not with your prayer or right to prayer, it was with the excessive volume (loudness) which was found to have disrupted the unit." (*Id.*) Plaintiff did not appeal Getmanov's decision to the Warden. (ECF No. 5 at 7; Aff. of Lt. Victor Iannello (ECF No. 37-5) at ¶ 14.)

### B. Procedural Background

On March 31, 2014, Plaintiff filed an initial Complaint in this matter in which multiple other inmates were also listed as plaintiffs. (ECF No. 1.) On April 4, 2014, the Court *sua sponte* dismissed this Complaint because, among other things, the other plaintiffs had not paid a filing fee or applied to proceed *in forma pauperis*, and it was unclear from the Complaint if the alleged facts were applicable to all listed plaintiffs. (ECF No. 2.) On April 16, 2014, Plaintiff filed an Amended Complaint, which listed no plaintiffs other than Plaintiff. (ECF No. 3.) Plaintiff subsequently made application to file a Second Amended Complaint (ECF No. 4), which was granted by the Court on

September 15, 2014 (ECF No. 6). On November 12, 2014, Defendants moved to dismiss Plaintiff's Second Amended Complaint, or, in the alternative, for summary judgment. (ECF No. 12.) Plaintiff applied for pro bono counsel on December 3, 2014 (ECF No. 13) and then again on June 3, 2015 (ECF No. 17). The Court denied these requests on September 29, 2015. (ECF No. 27.) On June 30, 2015, the Court denied Defendants' Motion to Dismiss and declined to convert their Motion into one for summary judgment. (ECF No. 19.) Discovery in this matter ended on July 5, 2016, per the Court's April 1, 2016 Amended Scheduling Order. (ECF No. 32.) Defendants moved for summary judgment on July 21, 2016. (ECF No. 37.) This case was reassigned to the undersigned on August 9, 2016. (ECF No. 39.) Plaintiff has not opposed or otherwise responded to Defendants' Motion for Summary Judgment.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*,

477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. DECISION

Defendants argue they are entitled to summary judgement for a number of reasons, the foremost of which is this action is barred by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, *et seq.*, because Plaintiff failed to exhaust all available administrative remedies prior to filing suit.[3] The Court agrees.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Ball v. Famiglio*, 726 F.3d 448, 456 (3d Cir. 2013) (quoting 42 U.S.C. § 1997e(a)). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Prisoners are not required to exhaust "all remedies," but only "such administrative remedies 'as are available.'" *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) (quoting 42 U.S.C. § 1997e(a)); *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000)). There is no futility exception to the exhaustion requirement. *Ramos v. Smith*, 187 F. App'x 152, 153 (3d Cir. 2006) (citing *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000)).

---

[3] Defendants additionally argue summary judgment is appropriate because (1) Defendants' actions constituted a reasonable restriction of Plaintiff's behavior in furtherance of a valid penological purpose, and therefore did not violate Plaintiff's First Amendment rights to free exercise of religion; (2) Defendants are immune from suit under the doctrine of qualified immunity; and (3) insofar as Plaintiff raises a claim pursuant to the Religious Land Use and Institutionalized Person's Act ("RLUIPA"), Defendants did not place a "substantial burden" on Plaintiff's exercise of Islam, and therefore did not violate RLUIPA. However, the Court need not reach these arguments in this Opinion, because the Court finds Plaintiff's claims are barred under the PLRA due to his failure to exhaust administrative remedies.

7

"Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013) (citing *Jones v. Bock*, 549 U.S. 199, 216-17 (2007)). "Furthermore, the defendant must prove that the prisoner-plaintiff failed to exhaust each of his claims. There is no 'total exhaustion' rule permitting dismissal of an entire action because of one unexhausted claim." *Small*, 728 F.3d at 269 (citing *Jones*, 549 U.S. at 220-24.)

The Third Circuit has unequivocally ruled that "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small*, 728 F.3d at 269 (citing *Drippe v. Gototweski*, 604 F.3d 778, 781 (3d Cir. 2011)). As such, "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Small*, 728 F.3d at 271.

Plaintiff's claims are clearly governed by the PLRA, because he seeks to challenge the conditions of his confinement, namely his treatment by prison staff. Therefore, under the PLRA, Plaintiff was required to exhaust available administrative remedies before bringing suit before this Court. *See* 42 U.S.C. § 1997e(a). There is no dispute that at the time Plaintiff's claims accrued, MCCI had an established administrative grievance procedure in place, as set forth in the Inmate Handbook. Thus, so long as Plaintiff was aware of the grievance procedure outlined in the Inmate Handbook, this was the administrative remedy available to him at the time. *Small*, 728 F.3d at 271 ("Remedies that are not reasonably communicated to inmates may be considered unavailable for exhaustion purposes."). In that regard, the Court finds Plaintiff was aware of MCCI's grievance procedure when he filed his March 17, 2014 Inmate Grievance Form. Plaintiff admits he is familiar with and has read portions of the Inmate Handbook. (ECF No. 37-4, Ex. A at 25:22-23.) Moreover, the Inmate Grievance Form that Plaintiff submitted to MCCI outlines the various steps of the

grievance procedure. (ECF No. 37-7, Ex. 5.) Indeed, the simple fact Plaintiff filed his grievance form in full compliance with the procedure set forth in the Inmate Handbook, demonstrates he was aware of that procedure. Accordingly, as a matter of law, the grievance procedure set forth in the Inmate Handbook was the administrative remedy "available" to Plaintiff at the time of the events detailed in the Second Amended Complaint.

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (citation omitted). The Third Circuit has held that to complete the administrative review process, the plaintiff must have "substantially" complied with the prison's grievance procedure. *Small*, 728 F.3d at 272 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004)). Here, it is clear Plaintiff did not substantially comply with MCCI's grievance procedure, because he never appealed Getmanov's decision regarding his grievance to the Warden. Plaintiff complied with the initial steps of the grievance procedure by filing the March 17, 2014 Inmate Grievance Form complaining that Berenger had admonished Plaintiff for calling the Adhan. (*See* ECF No. 37-7, Ex. 5.) However, after Getmanov responded to Plaintiff's formal grievance request, explaining Berenger had appropriately reprimanded Plaintiff for his excessive loudness (ECF No. 37-7, Ex. 5), Plaintiff was required by MCCI's grievance procedure to appeal this decision, in writing, to the Warden. (ECF No. 37-7, Ex. 3 at 38-39.) Plaintiff, however, failed to submit this final appeal. (ECF No. 5 at 7; ECF No. 37-5 at ¶ 14.) Accordingly, Plaintiff failed to fully exhaust his available administrative remedies before bringing this action, and his claims are, therefore, barred by the

9

PLRA.[4] *See Ramos*, 187 F. App'x at 153 (case dismissed for failure to exhaust administrative remedies where plaintiff prisoner did not appeal denial of his grievances to second stage of administrative review); *Lee v. Strada*, 297 F. App'x 86, 87 (3d Cir. 2008) (same); *Hughes v. Knieblher*, 341 F. App'x 749, 751 (3d Cir. 2009) (same). Defendants are, therefore, entitled to summary judgment in this matter.

### IV.   CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment is **GRANTED**. An appropriate Order will follow.

Date: February 7, 2017                                /s/ Brian R. Martinotti
                                                      **HON. BRIAN R. MARTINOTTI**
                                                      **United States District Judge**

---

[4] Insofar as Plaintiff brings claims arising from facts not mentioned in his March 17, 2014 Inmate Grievance Form, Plaintiff has also failed to exhaust administrative remedies as to these claims, because he did not file a formal grievance with MCCI regarding these claims.